UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 6:03-mj-040 |
| v. | ORDER GRANTING PETITION FOR WRIT OF *CORAM NOBIS* |
| ADAM W. HUBENIG, | (Doc. 7) |
| Defendant/Petitioner. | ORDER DIRECTING CLERK OF COURT TO VACATE GUILTY PLEAS |
| | STATUS HEARING SET FOR JULY 13, 2010 AT 10:00 a.m. |

Before the Court is Petitioner Andrew Hubenig's Petition for Writ of *Coram Nobis.* (Pet., ECF No. 7.) The Petition was briefed by the parties pursuant to an agreed-upon briefing schedule, and the Court held oral argument on June 10, 2010.

For the reasons explained below, Petitioner's Petition will be GRANTED and the Court will issue a Writ of *Coram Nobis*.

**I.   JURISDICTION**

Federal courts have a duty to examine if subject matter jurisdiction exists whether or not the parties raise the issue. See United Investors Life Ins. Co. v. Waddell & Reed, Inc., 360 F.3d 960, 966 (9th Cir. 2004) ("[A] district court's duty to establish subject matter jurisdiction is not contingent upon the parties' arguments," citing Mitchell v. Maurer, 293 U.S. 237, 244; 55 S. Ct. 162, 165 (1934)).

The instant Petition is filed pursuant to the All Writs Act which permits "courts

established by Act of Congress" to issue "all writs necessary or appropriate in aid of their respective jurisdictions." 28 U.S.C. § 1651(a). The All Writs Act does not itself confer jurisdiction. Rather, "a court's power to issue any form of relief . . . is contingent on that court's subject-matter jurisdiction over the case or controversy." United States v. Denedo, __ U.S. __, 129 S. Ct. 2213, 2221 (2009). An application for *coram nobis* relief is "properly viewed as a belated extension of the original proceeding during which the error allegedly transpired." Id. Thus, if the Court had subject matter jurisdiction over the original judgment of conviction, it has subject matter jurisdiction over the application for *coram nobis* relief. Id. at 2222.

Within constitutional bounds, Congress determines the subject-matter jurisdiction of the federal courts. Bowles v. Russell, 551 U.S. 205, 212 (2007). Congress has conferred on a magistrate judge, such as the undersigned, the authority to take a guilty plea in a petty offense case. See 28 U.S.C. § 636(a) ("Each United States magistrate judge . . . shall have . . . all powers and duties conferred or imposed . . . by the Rules of Criminal Procedure."); Fed. R. Crim. P. 58(b) ("A magistrate judge may take the defendant's guilty plea in a petty offense case."). Magistrate judges are also empowered to "enter a sentence for a petty offense." 28 U.S.C. § 636(a)(4). The offenses at issue in this case were Class B misdemeanors and, therefore, fall within the definition of "petty offense." See 18 U.S.C. § 19. Thus, the magistrate judge sitting in this Court in 2003 was empowered to take Petitioner's guilty plea when it was entered, and the undersigned, a successor magistrate judge in this Court, now has subject matter jurisdiction over Petitioner's application for writ of *coram nobis*.

## II. LEGAL STANDARD

The writ of *coram nobis* is an extraordinary remedy that allows a petitioner to attack an unconstitutional or unlawful conviction after the petitioner has served his sentence and is no longer in custody. United States v. Morgan, 346 U.S. 502, 511, 74 S. Ct. 247, 252 (1954); Estate of McKinney v. United States, 71 F.3d 779, 781 (9th Cir. 1995). "The writ provides a remedy for those suffering from the 'lingering collateral consequences of an

1  unconstitutional or unlawful conviction based on errors of fact' and 'egregious legal errors.'"
2  United States v. Walgren, 885 F.2d 1417, 1420 (9th Cir. 1989) (quoting Yasui v. United
3  States, 772 F.2d 1496, 1498-99 & n.2 (9th Cir. 1985)). The writ permits a court to vacate
4  its judgment when an error has occurred that is of the most fundamental character such
5  that the proceeding itself is rendered invalid. McKinney, 71 F.3d at 781. The writ should
6  be granted "only under circumstances compelling such action to achieve justice." Morgan,
7  346 U.S. at 511.

8  **III.    FACTUAL BACKGROUND**

9  On March 7, 2003, Petitioner Adam Hubenig, a Canadian citizen who was living and
10 working in the United States, was arrested during a visit to Yosemite National Park.
11 National Park Service Ranger Mark Faherty stopped Petitioner's car and arrested
12 Petitioner for violating 36 C.F.R. § 4.21(c) (excessive speed), 36 C.F.R. § 4.12 (traffic
13 control violation), and 36 C.F.R. § 2.35(b) (possession of controlled substance). After
14 being held overnight at the Yosemite jail, Petitioner was released on bond without posting
15 bail. (Citations P228191, P228192, P228193, ECF No. 7-2.)

16 Petitioner retained attorney John Frankel to represent him on the pending charges.
17 (Decl. of John Frankel ¶ 2, ECF No. 7-4.) Mr. Frankel advised Petitioner to plead guilty
18 to all three offenses. (Id. ¶ 3.) At the time Frankel offered this advice, he was aware both
19 that Petitioner was a Canadian citizen and that Petitioner had been convicted of
20 possession of a controlled substance a few months earlier. (Id. ¶¶ 4-6.) Frankel did not
21 discuss with Petitioner whether a guilty plea to the pending charges would affect his
22 immigration status. (Id. ¶ 7.) On the advice of counsel, Petitioner pled guilty to the three
23 crimes charged. He was fined $350.00, sentenced to twelve months of unsupervised
24 probation, and ordered to stay away from Yosemite National Park for the full term of his
25 probation. (Tr. of Ct. Proceedings on March 25, 2003  pp. 2-8, ECF No. 7-3.)

26 In late fall of 2008, deportation proceedings were filed against Petitioner based on
27 his two convictions for possession of 30 grams or less of a controlled substance, namely
28 marijuana. (Decl. of Stephen Eckdish  ¶¶ 16-21, ECF No. 7-6.)  These immigration

proceedings are still pending. (Id. ¶ 12.)

## IV. ANALYSIS

To qualify for *coram nobis* relief, a petitioner must establish the following: (1) a more usual remedy is not available; (2) valid reasons exist for not attacking the conviction earlier; (3) adverse consequences exist from the conviction to satisfy the case and controversy requirement of Article III; and (4) the error suffered is of the most fundamental character. United States v. Kwan, 407 F.3d 1005, 1011 (9th Cir. 2005) (abrogated on other grounds by Padilla v. Kentucky, __ U.S. __, 130 S. Ct. 1473 (2010)).

The parties do not dispute that, because Petitioner has served his sentence and is out of custody, no more usual remedies are available to him. Thus, Petitioner has satisfied the first prong of the *coram nobis* test. The parties disagree as to whether Petitioner has met his burden with respect to the three remaining prongs. The Court will address each in turn below.

### A. Failure to Challenge Conviction Earlier

There is no statute of limitations on filing a petition for writ of *coram nobis*. Telink, Inc. v. United States, 24 F.3d 42, 45 (9th Cir. 1994). Instead, a petitioner is required to provide a valid or sound reason for not having attacked his conviction earlier. Id. Few courts have expounded on what constitutes a "valid" or "sound" reason but the writ has been denied when a petitioner provides no explanation or appears to be abusing the writ and when the respondent demonstrates prejudice as a result of the delay. Kwan, 407 F.3d at 1013.

A district court evaluating a petition for writ of *coram nobis* is free at any time to deny the writ "if the petitioner inexcusably delays in asserting his claims and the government is prejudiced by the delay." Telink, 24 F.3d at 47. "In making a determination of prejudice, the effect of the delay on both the government's ability to respond to the petition and the government's ability to mount a retrial are relevant." Id. at 48.

Petitioner asserts that he was unaware of the impact his 2003 convictions would have on his immigration status until late fall of 2008 when the Government brought

deportation proceedings against him. (Decl. of Adam Hubenig p. 1, ECF No. 7-5. ) The instant Petition was filed in April 2010.[1]

The Court finds that Petitioner has asserted a valid reason for not seeking relief earlier—he was unaware of the immigration consequences of his guilty plea until late fall 2008. As the United States Court of Appeals for the Ninth Circuit has held, "[t]he law does not require [the petitioner] to challenge his conviction at the earliest opportunity, it only requires [the petitioner] have sound reasons for not doing so." Kwan, 407 F.3d at 1014. Moreover, the decision principally relied on by Petitioner to show that he suffered a fundamental error, Padilla v. Kentucky, __ U.S. __, 130 S. Ct. 1473 (2010), was decided on March 31, 2010. In a similar situation, the Ninth Circuit held that a petitioner had asserted a valid reason for not attacking his conviction earlier. See Walgren, 885 F.2d at 1420 (petitioner's reliance on recent Supreme Court opinion excused his delay in filing for *coram nobis* relief). The instant Petition was filed within weeks of the Padilla decision.

The Government asserts that it is prejudiced by Petitioner's delay because witnesses' memories of the relevant events have deteriorated and because the arresting ranger has relocated out of Yosemite. It is undisputed that Petitioner was unaware of the collateral consequences of his guilty plea until fall of 2008. Accordingly, the salient question is whether the Government was prejudiced by the delay between Petitioner's discovery of the adverse deportation consequences in the fall of 2008 and filing his Petition in April 2010. The Government makes no allegation of prejudice specific to this time period; it would be difficult to do so. It is unlikely that the Government witnesses' memories of the 2003 event were measurably better in the fall of 2008 when Petitioner's deportation proceedings began than in April 2010 when the instant Petition was filed. In any event, as Petitioner's counsel alleges, law enforcement officers routinely depend upon citations and/or other arrest records to refresh their recollections. Additionally, Petitioner's counsel asserts that in her experience litigating cases in Yosemite National Park, relocated Park

---

[1] Petitioner originally filed a Motion for Post-Conviction Relief (ECF No. 5) which was later withdrawn in favor of the instant Petition for Writ of *Coram Nobis*. (ECF No. 7.)

-5-

Rangers are regularly brought back to testify in criminal matters. This claim has not been disputed.

The Court finds that the Government has failed to show significant prejudice as a result of Petitioner's delay in seeking relief. The Court also finds that the Petitioner has asserted a valid reason for not seeking relief earlier. Accordingly, the Petitioner has satisfied the second prong of the *coram nobis* analysis.

### B.  Adverse Consequences

Petitioner is in the midst of deportation proceedings based, at least in part, on his 2003 conviction for possession of a controlled substance. Accordingly, despite the Government's contention to the contrary, there are sufficient adverse consequences to his guilty plea to satisfy Article III's case or controversy requirement. See Kwan, 407 F.3d at 1014 ("It is undisputed that the possibility of deportation is an 'adverse consequence' of [petitioner]'s conviction sufficient to satisfy Article III's case or controversy requirement."); Park v. California, 202 F.3d 1146, 1148 (9th Cir. 2000) ("Because he faces deportation, [petitioner] suffers actual consequences from his conviction.").

### C.  Fundamental Error

The final prong of the *coram nobis* analysis, and the one most contested in this case, is whether Petitioner has established that he suffered an error of the most fundamental character before entering his guilty plea. Petitioner asserts that he received ineffective assistance of counsel. Ineffective assistance of counsel has been recognized as a fundamental error which can satisfy this prong of the *coram nobis* analysis. See Kwan, 407 F.3d at 1014 ("[Petitioner] may satisfy the fundamental error requirement by establishing that he received ineffective assistance of counsel.")

To prevail on his ineffective assistance of counsel claim, Petitioner must show: (1) that his counsel's performance fell below an objective standard of reasonableness; and (2) that he was prejudiced by his counsel's deficiency. Strickland v. Washington, 466 U.S. 668, 687-88 (1984). The Court will address each prong of the Strickland analysis in turn below.

1.  Counsel's Performance

When Petitioner pled guilty in 2003, Ninth Circuit precedent stated that it was not ineffective assistance of counsel for an attorney to fail to advise his client regarding the potential impact of a conviction on his immigration status, so long as the attorney did not affirmatively mislead his client. Compare United States v. Fry, 322 F.3d 1198, 1200 (9th Cir. 2003) ("[C]ounsel's failure to advise a defendant of collateral immigration consequences of the criminal process does not violate the Sixth Amendment right to effective assistance of counsel.") with Kwan, 407 F.3d at 1017 (counsel was ineffective when he affirmatively misled his client about a conviction's impact on his immigration status). However, in Padilla, the United States Supreme Court recently held that a counsel's performance falls below the objective standard of reasonableness if she fails to advise her client of the potential impact the client's guilty plea may have on his immigration status. Padilla, 130 S. Ct. at 1486.

The principal dispute in this proceeding is whether the Petitioner can rely on Padilla when challenging his attorney's performance. Petitioner's conviction became final nearly seven years before Padilla was decided. Because the Government has argued that Padilla does not apply here, the Court must decide whether Padilla is retroactive before turning to the merits of Petitioner's claim. See Caspari v. Bohlen, 510 U.S. 383, 389 (1994) (noting that once a state "argue[s] that the defendant seeks the benefit of a new rule of constitutional law, the court *must* apply Teague before considering the merits of the claim."); Tanner v. McDaniel, 493 F.3d 1135, 1141 (9th Cir. 2007) (same).

a.  Retroactivity of Padilla

The starting point for any retroactivity analysis is Teague v. Lane, 489 U.S. 288 (1989). Teague's general principle is that "new constitutional rules of criminal procedure will not be applicable to those cases which have become final before the new rules are announced." Id. at 310. "Under the Teague framework, an old rule applies both on direct and collateral review, but a new rule is generally applicable only to cases that are still on direct review." Whorton v. Bockting, 549 U.S. 406, 416 (2007). Thus, the Court must

determine whether Padilla announces a new rule for purposes of the Teague analysis.

When the Supreme Court applies a well-established rule of law in a new way based on the specific facts of a particular case, it does not generally establish a new rule. See Stringer v. Black, 503 U.S. 222, 228-29 (1992) (where application of a prior rule of law did not "break new ground," it was not a new rule); Turner v. Williams, 35 F.3d 872, 885 (4th Cir. 1994) ("[W]hen we apply an extant normative rule to a new set of facts (leaving intact the extant rule) generally we do not announce a new constitutional rule of criminal procedure for purposes of Teague."). The issue before the Supreme Court in Padilla was whether defense counsel's performance met the first prong of the Strickland test—that is, whether it "fell below an objective standard of reasonableness." Padilla, 130 S. Ct. at 1482 (quoting Strickland, 466 U.S. at 688). The Strickland test for what constitutes ineffective assistance of counsel is an old, well-established rule of law. See Williams v. Taylor, 529 U.S. 362, 391 (2000) ("It is past question that the rule set forth in Strickland qualifies as 'clearly established Federal law, as determined by the Supreme Court of the United States.'").

Moreover, the Strickland inquiry into whether counsel's performance is constitutionally sufficient requires a case-by-case examination of the evidence. Williams, 529 U.S. at 391; see also Tanner, 493 F.3d at 1143 ("the general nature of Strickland requires courts to elaborate upon what an 'objective standard of reasonableness' means for attorney performance in innumerable factual contexts"); Newland v. Hall, 527 F.3d 1162, 1197 (11th Cir. 2008) ("Strickland set forth the paradigmatic example of a rule of general application; it establishes a broad and flexible standard for the review of an attorney's performance in a variety of factual circumstances."). "If the rule in question is one which of necessity requires a case-by-case examination of the evidence, then we can tolerate a number of specific applications without saying that those applications themselves create a new rule." Wright v. West, 505 U.S. 277, 308-09 (1992) (Kennedy, J., concurring). Thus, specific applications of Strickland do not generally establish a new rule for purposes of Teague.

The Supreme Court has issued a number of relatively recent opinions applying the Strickland test in a variety of different factual contexts; none of these cases has been afforded new rule status under Teague. See, e.g., Rompilla v. Beard, 545 U.S. 374 (2005); Wiggins v. Smith, 539 U.S. 510, 522 (2003); Williams, 529 U.S. at 391. As one court has noted:

> Williams, Wiggins, and Rompilla are not new law under Teague. . . . In Williams, Wiggins, and Rompilla, the Court did nothing more than apply Strickland's standard to a specific set of circumstances: in Williams, counsel's failure to uncover available state records indicating Williams's "nightmarish childhood," 529 U.S. at 395, 120 S. Ct. at 1514; in Wiggins, counsel's failure to investigate Wiggins's background, despite evidence of his abusive upbringing, 539 U.S. at 524, 123 S. Ct. at 2536-37; and in Rompilla, counsel's failure to investigate a file containing evidence that the state intended to use in aggravation. 545 U.S. at 383, 125 S. Ct. at 2463.

Newland, 527 F.3d at 1197. Similarly, in Padilla, the Supreme Court merely applied Strickland to defense counsel's failure to advise her client regarding the possible immigration consequences of his guilty plea.

Although generally the application of an established rule of law such as Strickland does not constitute a new rule, a new rule may be announced if "the prior decision is applied in a novel setting, thereby extending the precedent." Stringer, 503 U.S. at 228. For the reasons discussed herein, this Court concludes that Padilla's application of Strickland's well-established test for determining whether counsel's performance was objectively reasonable did not produce a novel result and, therefore, did not announce a new rule for purposes of Teague. Wright, 505 U.S. at 309 (Kennedy, J., concurring); see also Tanner, 493 F.3d at 1144 (case applying Strickland "did not produce 'a result so novel' as to have forged a new rule.").

The idea that reasonably prudent counsel would advise her client with respect to the potential impact of a guilty plea on his immigration status is not a novel concept. See Kwan, 407 F.3d at 1017 (counsel had a responsibility not to mislead his client with respect whether a guilty plea would make him deportable). The Supreme Court has recognized

the importance of counseling one's client with respect to the immigration consequences of a guilty plea since at least 2001. In INS v. St. Cyr, 533 U.S. 289 (2001), the Court stated that "competent defense counsel, following the advise of numerous practice guides, would have advised" her client regarding whether his conviction would affect his removability from the United States. Id. at 323 n.50. The Court noted that "preserving the client's right to remain in the United States may be more important to the client than any potential jail sentence" and that "preserving the possibility of [discretionary] relief" from deportation "would have been one of the principal benefits sought by defendants deciding whether to accept a plea offer or instead to proceed to trial." Id. at 322-23.

Additionally, the Supreme Court has long held that prevailing professional norms "are guides to determining what is reasonable." Strickland, 466 U.S. at 688; see also Wiggins, 539 U.S. at 522 (referring to ABA Standards for Criminal Justice to determine what constitutes reasonably effective counsel); Kwan, 407 F.3d at 1016 (same). In St. Cyr, the Supreme Court noted that the ABA Standards published in 1982 provided that, "if a defendant will face deportation as a result of a conviction, defense counsel 'should fully advise the defendant of these consequences.'" Id. at 323 n.48 (quoting 3 ABA Standards for Criminal Justice, 14-3.2 Comment, 75 (2d ed. 1982)). The Supreme Court cited a number of additional professional standards in Padilla and concluded that "[t]he weight of prevailing professional norms supports the view that counsel must advise her client regarding the risk of deportation." Padilla, 130 S. Ct. at 1482 (citing National Legal Aid and Defendant Assn., Performance Guidelines for Criminal Representation § 6.2 (1995); G. Herman, Plea Bargaining § 3.03, pp. 20-21 (1997); Chin & Holmes, Effective Assistance of Counsel and the Consequences of Guilty Pleas, 87 Cornell L. Rev. 697, 713-18 (2002); A. Campbell, Law of Sentencing § 13:23, pp. 555, 560 (3d ed. 2004); Dept. of Justice Programs, 2 Compendium of Standards for Indigent Defense Systems, Standards for Attorney Performance, pp. D10, H8-H9, J8 (2000); ABA Standards for Criminal Justice, Prosecution Function and Defense Function 4-5.1(a), p. 197 (3d ed. 1993); ABA Standards for Criminal Justice, Pleas of Guilty 14-3.2(f), p. 116 (3d ed. 1999)). Considering both prior

Supreme Court precedent and the prevailing professional norms, the result in Padilla is not novel.

The fact that Padilla overruled Ninth Circuit precedent is not dispositive of whether it established a new rule for Teague purposes. See Tanner, 493 F.3d at 1143 n.7 ("Although the Court resolved a Circuit split in Flores-Ortega, that fact alone does not imply that the Court announced a new constitutional rule.") "[T]he standard for determining when a case establishes a new rule is 'objective,' and the mere existence of conflicting authority does not necessarily mean a rule is new." Williams, 529 U.S. at 410 (quoting Wright, 505 U.S. at 304 (O'Connor, J., concurring)). In fact, the Ninth Circuit has held: "Each time that a court delineates what 'reasonably effective assistance' requires of defense attorneys with respect to a particular aspect of client representation, . . . it can hardly be thought to have created a new principle of constitutional law." Tanner, 493 F.3d at 1143-44.

Moreover, the Supreme Court signaled that it understood its holding in Padilla would apply retroactively. The Court stated that it had "given serious consideration" to the argument that its ruling would open the "floodgates" to new litigation challenging prior guilty pleas. Id. at 1484-85. The Court minimized the "floodgates" concern by stating that a petitioner would have to show not only that his counsel's performance fell below professional standards, but also that he was prejudiced by the deficient performance. Id. at 1485. If the Court intended Padilla to be a new rule which would apply only prospectively, the entire "floodgates" discussion would have been unnecessary.

The Government points to the Supreme Court's statement that it "*now hold[s]* that counsel must inform her client whether his plea carries a risk of deportation" as indicating that the Court was intending to create a new rule of law. Padilla, 130 S. Ct. at 1486 (emphasis added). When faced with an identical argument, the Third Circuit stated that "[t]his language is hardly dispositive or even persuasive," as the phrase "now holds" "merely states the obvious (that the case announced a rule on a particular day)." Lewis v. Johnson, 359 F.3d 646, 655 (3d Cir. 2004). The Supreme Court typically attempts to summarize its holding in a concise, easily-understood manner, ordinarily at the conclusion

1  of the majority opinion. The use of the phrase "now hold[s]" as part of this conclusion in
2  Padilla does not impact whether it establishes a new rule for purposes of Teague.
3      Having considered all of the above, the Court concludes that Padilla did not
4  establish a new rule for purposes of Teague. As such, the Court must consider Padilla in
5  determining whether Petitioner was deprived of his Sixth Amendment right to the effective
6  representation of counsel.
7                        b.        Reasonableness of Petitioner's legal representation
8      The relevant facts in this case are uncontested. Petitioner has submitted an
9  affidavit from John Frankel, attorney-of-record for Petitioner when he entered his guilty plea
10 in 2003. Frankel states that he was aware that Petitioner was not a United States citizen
11 and that Petitioner had been convicted of possession of a controlled substance only a few
12 months earlier. (Frankel Decl. ¶¶ 4-6.) Frankel admits that, despite this knowledge, he
13 failed to discuss the potential impact of Petitioner's guilty plea on his immigration status.
14 (Id. ¶ 7.)
15     In Padilla, the Supreme Court provided guidance as to the contours of defense
16 counsel's obligation to advise her client on the possible immigration consequences of a
17 guilty plea: "When the law is not succinct and straightforward . . ., a criminal defense
18 attorney need do no more than advise a noncitizen client that pending criminal charges
19 may carry a risk of adverse immigration consequences. But when the deportation
20 consequence is truly clear . . ., the duty to give correct advice is equally clear." Id. at 1483.
21     In this case, the deportation consequences of Petitioner's plea to his second offense
22 involving possession of a controlled substance were "truly clear." Federal law provided
23 then, as it does now: "Any alien who at any time after admission has been convicted of a
24 violation of . . . any law . . . of the United States . . . relating to a controlled substance . .
25 ., other than a single offense involving possession for one's own use of 30 grams or less
26 of marijuana, is deportable." 8 U.S.C. § 1227(a)(2)(B)(i). Even a cursory reading of the
27 statute would have revealed that Petitioner would be deportable if he pled guilty to a
28 second offense involving a controlled substance, even if only a misdemeanor possession.

Accordingly, under Padilla, Frankel had a duty not only to advise Petitioner that his conviction could adversely impact his immigration status, but to provide the correct advice that a guilty plea to his second controlled substances offense would make him deportable.

The undisputed facts show that Frankel failed to meet his professional obligations in this regard. Petitioner has therefore established that counsel's performance fell below an objective standard of reasonableness and satisfied the first prong of the Strickland analysis.

### 2. Prejudice

"In the context of a plea, a petitioner satisfies the prejudice prong of the Strickland test where 'there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'" Smith v. Mahoney, 596 F.3d 1133, 1141 (9th Cir. 2010) (quoting Hill v. Lockhart, 474 U.S. 52, 59 (1985)). "That an alien charged with a crime . . . would factor the immigration consequences of conviction into deciding whether to plead or proceed to trial is well-documented." Magana-Pizano v. INS, 200 F.3d 603, 612 (9th Cir. 1999). As the Supreme Court stated in Padilla: "Counsel who possess the most rudimentary understanding of the deportation consequences of a particular criminal offense may be able to plea bargain creatively with the prosecutor in order to craft a conviction and sentence that reduce the likelihood of deportation, as by avoiding a conviction for an offense that automatically triggers the removal consequence." Id. at 1486.

In this case, Petitioner was cited for three violations: excessive speed, failure to comply with a traffic control device, and possession of a controlled substance. (Citations.) On the advice of counsel, Petitioner pled guilty to all three charges in exchange for the Government recommending a sentence of twelve months of unsupervised probation (during which Petitioner was to stay out of Yosemite National Park) and payment of a $25 fine on the speeding charge, a $75 fine on the traffic control device charge, and a $250 fine on the possession of a controlled substance charge. (Tr. at 1-7.) The Court accepted Petitioner's guilty plea to the three charges and imposed the recommended sentence. (Id.

at 7.)

Petitioner now states that he would not have chosen to plead guilty had he known the immigration consequences of his plea. (Hubenig Decl. at 1.) Frankel has stated that he would have negotiated a different plea agreement if he had known the immigration consequences of Petitioner's second controlled substances conviction. (Frankel Decl. ¶ 8.) There is no contrary evidence.

The Court has little difficulty finding that Petitioner was prejudiced by his counsel's failure to advise him of the immigration consequences of his guilty plea. Had Petitioner proceeded to trial and been convicted on all three charges, he would have faced at most six months in prison and a $5,000 fine on each charge. 36 C.F.R. § 1.3(a); 18 U.S.C. § 3571(b)(6). A reasonable person could certainly conclude that the risk of this punishment—even considering the very unlikely event that the statutory maximum penalty might be imposed—was worth the possibility of avoiding deportation, a punishment that the Supreme Court has characterized as "the equivalent of banishment or exile." Delgadillo v. Carmichael, 332 U.S. 388, 390-91 (1947). This would be expected to be especially true for someone like the Petitioner who is married to a United States citizen and, like many long-time legal residents, has strong ties to his business, family, and social community here. (Hubenig Decl. at 1.) The Court also notes that Petitioner did not receive such a good bargain as a result of his plea that it would have been unreasonable for him to forgo the plea and proceed to trial. The agreed-upon sentence of twelve months of unsupervised probation and a $350.00 fine is not particularly favorable when measured against a typical sentence for the types of crimes with which he was charged.

The Court finds that Petitioner has met the standard of showing a reasonable probability that he would not have pled guilty if he had been fully advised of the consequences of his plea. As such, he has shown that he was prejudiced by his counsel's ineffective assistance and has satisfied both prongs of the Strickland test. Accordingly, Plaintiff has established that he was denied his Sixth Amendment right to the assistance of counsel, a fundamental error.

**D.    Remedy**

Because Petitioner has satisfied all four requirements for *coram nobis* relief, and the Court finds that this situation presents the extraordinary circumstances for which the writ of *coram nobis* offers the only possible relief, the Court will issue the writ. In deciding the remedy, the Court must consider the unique facts and circumstance of this particular case. United States v. Morrison, 449 U.S. 361, 364 (1981). The Ninth Circuit has held that "[w]hen ineffective assistance of counsel has deprived a defendant of a plea bargain, a court may choose to vacate the conviction and return the parties to the plea bargaining stage." Riggs v. Fairman, 399 F.3d 1179, 1184 (9th Cir. 2005). Having considered the facts and circumstances of this case, the Court concludes that the appropriate remedy is to vacate all three of Petitioner's 2003 convictions and return the parties to the plea bargaining stage.

**V.    CONCLUSION**

For the reasons discussed above, Petitioner Hubenig's Petition for Writ of *Coram nobis* (Doc. 7) is GRANTED. Hubenig's guilty pleas to Citation P228191 (excessive speed), Citation P228192 (failure to comply with a traffic control device), and Citation P228193 (possession of a controlled substance) entered on March 25, 2003 are VACATED. A status conference in this matter is set for July 13, 2010 at 10:00 a.m.

IT IS SO ORDERED.

Dated:    July 1, 2010            /s/ *Michael J. Seng*
                                  UNITED STATES MAGISTRATE JUDGE